**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**METROPOLITAN LIFE INSURANCE**
**COMPANY,**

                                    **Plaintiff,**

            **vs.**

                                                    **1:20-CV-01351**
                                                    **(MAD/DJS)**

**DAVID M. OLIVER, JAMES W. OLIVER,**
**BARBARA FORTH, CAROL LEE OLIVER,**
**PAUL R. WEBB, III, and THOMAS J. WEBB,**

                                    **Defendants.**

_____

**PAUL R. WEBB, III and THOMAS J. WEBB,**

                                    **Cross-Plaintiffs,**

            **vs.**

**DAVID M. OLIVER, JAMES W. OLIVER,**
**BARBARA FORTH, and CAROL LEE**
**OLIVER,**

                                    **Cross-Defendants.**

_____

**DAVID M. OLIVER, JAMES W. OLIVER,**
**BARBARA FORTH, and CAROL LEE**
**OLIVER,**

                                    **Cross-Plaintiffs,**

            **vs.**

**PAUL R. WEBB, III and THOMAS J. WEBB,**

                                    **Cross-Defendants.**

_____

**APPEARANCES:**                    **OF COUNSEL:**

**DAVID M. OLIVER**
7 Longbrook Road
Byfield, Massachusetts 01922
Defendant, *Pro Se*

**JAMES W. OLIVER**
6 Sagamore Drive
Simsbury, Connecticut 06070
Defendant, *Pro Se*

**BARBARA FORTH**
25662 Nottingham Court
Laguna Hills, California 92653
Defendant, *Pro Se*

**CAROL LEE OLIVER**
80 Wharf Street D.
Salem, Massachusetts 01970
Defendant, *Pro Se*

**PATTEN LAW FIRM**                    **LISA PATTEN, ESQ.**
7575 Dr. Phillips Boulevard
Suite 250
Orlando, Florida 32819
Attorneys for Defendants Paul R. Webb, III
and Thomas J. Webb

**OFFICE OF MATTHEW C. HUG**          **MATTHEW C. HUG, ESQ.**
105 Jordan Road
Wynantskill, New York 12180
Attorneys for Defendants Paul R. Webb, III
and Thomas J. Webb

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff, Metropolitan Life Insurance Company, brought this interpleader action on March

10, 2020, in the District of Massachusetts against Defendants David M. Oliver, James W. Oliver,

Barbara Forth, Carol Lee Oliver, (hereinafter collectively the "Oliver Defendants"), Paul R.

Webb, III, and Thomas J. Webb (hereinafter collectively the "Webb Defendants").  Dkt. No. 1.

On October 16, 2020, the District of Massachusetts transferred this action to the Northern District

of New York.  Dkt. No. 101.

On February 8, 2021, the parties filed a joint notice of pending motions.  Dkt. No. 126.

The parties stipulated that there were two pending motions.  First, the Webb Defendants' motion

to dismiss each of the Oliver Defendants' second and third cross-claims filed on August 5, 2020.

Dkt. No. 49.  Second, the Oliver Defendants' motions to dismiss the Webb Defendants' second

and third cross-claims.  Dkt. Nos. 52, 53, 55, 56, 58, 59, 61, 62.

## II. BACKGROUND

### A.     Procedural History

Plaintiff brought this interpleader action on March 10, 2020, in the District of

Massachusetts against the Oliver Defendants and Webb Defendants.  Dkt. No. 1.  The

interpleader action concerns a dispute over life insurance benefits payable under the terms of an

employee benefit plan (the "Plan") established and maintained by General Electric Company

("GE").  *Id.*  Plaintiff issued a group insurance policy that funds the payment of the life insurance

benefits made available by the Plan.  *Id.*

The Oliver Defendants each filed separate answers to Plaintiff's complaint.  Dkt. Nos. 14,

16, 17, 40.  On July 15, 2020, the Webb Defendants filed an answer and alleged cross-claims

against the Oliver Defendants.  Dkt. No. 26.  On July 17, 2020, James Oliver, Carol Oliver, and

Barbara Forth each filed an amended answer and cross-claims against the Webb Defendants.  Dkt.

Nos. 36, 37, 38, 39.  On July 20, 2020, David Oliver filed an answer and cross-claims against the

Webb Defendants.  Dkt. No. 40.

The Webb Defendants asserted cross-claims against the Oliver Defendants for declaratory relief, intentional interference with an inheritance expectancy, and rescission. Dkt. No. 26 at 9-12. However, the Webb Defendants filed a notice of voluntary dismissal of their rescission claim on August 24, 2020. Dkt. No. 76. The Oliver Defendants each asserted cross-claims against the Webb Defendants for declaratory relief and defamation *per se*. Dkt. Nos. 37, 38, 39, 40.

On October 16, 2020, the District of Massachusetts transferred this action to the Northern District of New York. Dkt. No. 101. Following the transfer of venue, the parties filed a joint notice of pending motions on February 8, 2021. Dkt. No. 126. The parties stipulated that there were two pending motions. First, the Webb Defendants' motion to dismiss the Oliver Defendants' second and third cross-claims filed on August 5, 2020. Dkt. Nos. 49, 126. Second, the Oliver Defendants' motions to dismiss Webb Defendants' second cross-claim. Dkt. Nos. 52, 53, 55, 56, 58, 59, 61, 62, 126. The Parties' joint stipulation does not make any reference to the Webb Defendants' outstanding motion for leave to file a reply to the Oliver Defendants' separate responses to the Webb Defendants' motion to dismiss. *See* Dkt. Nos. 87, 126. Therefore, the Court will examine the Webb Defendants' motion for leave.

**B.   Factual Allegations[1]**

Paul Webb, II (hereinafter "the Decedent"), was an employee of GE and a Plan participant. Dkt. No. 1 at ¶ 12. The Decedent had practiced law for 50 years as a patents and trademarks lawyer. Dkt. No. 26 at ¶ 21. The Decedent married Marion A. Webb in 1956 and had five children during their marriage, Paul R. Webb, III, Thomas J. Webb, Elizabeth Webb, Jennifer

---

[1] The Oliver Defendants all appear *pro se* and have submitted nearly identical amended answers and cross-claims. *See* Dkt. Nos. 37, 38, 39, 40. In the interest of brevity, the Court will cite to only Defendant James Oliver's amended answer and cross-claims. Dkt. No. 37.

Webb, and Frank Webb.  *Id*. at ¶ 11.  In 1992, Marion A. Webb died.  *Id*.  In 1995, the Decedent married Anne Oliver.  *Id.* at ¶ 12.

The Decedent and Anne Oliver had no children together.  *Id*.  Anne Oliver had four children from a previous marriage: the Oliver Defendants.  *Id*.

In the early 2000s, the Decedent and Anne Oliver retained a law firm to update their estate planning.  Dkt. No. 37 at ¶ 14.  On November 13, 2006, Anne Webb executed a new will and testament that bequeathed the Decedent a life estate in the home they shared in the event of her death.  *Id*. at ¶ 15.  In August 2010, the Decedent executed a new last will and testament conveying a nominal grant of $500 to the Webb Defendants and the remainder of his estate to Anne Oliver and her biological children, the Oliver Defendants.  *Id*. at ¶ 16.  On December 9, 2003, the Decedent named his second wife, Anne Oliver, as the sole beneficiary to his Life Insurance Benefits.  Dkt. No. 26 at ¶ 23.  The Oliver Defendants assert that in 2013, the Decedent was diagnosed with cognitive insufficiency and required assistance with management of his finances.  Dkt. No. 37 at ¶ 17.  In 2013, the Decedent and Anne Oliver executed a New York State Statutory Powers of Attorney form appointing Defendant David Oliver as their attorney-in-fact to assist them in managing their finances.  *Id*. at ¶ 18.  Anne Oliver died in March 2014, and Decedent continued to reside in New York.  *Id*. at ¶¶ 20, 22.

On April 19, 2014, an updated GE Beneficiary Designation Form was executed, listing the Oliver Defendants as the beneficiaries to the Decedent's life insurance benefits.  Dkt. No. 1 at ¶¶ 19; Dkt. No. 37 at ¶ 24.  The Oliver Defendants assert that the Decedent executed the new form in the presence of his long-time estate planning attorney.  Dkt. No. 37 at ¶ 24.  However, the Webb Defendants assert that Defendant David Oliver executed the form while using his authority under the Power of Attorney for the Decedent.  Dkt. No. 26 at ¶ 24.

The Webb Defendants allege that Defendant David Oliver stated on the April 2014 Beneficiary Designation Form that the Oliver Defendants were the Decedent's stepchildren. *Id*. at ¶ 25. GE rejected the modification of the beneficiary designation. *Id*. The Webb Defendants further allege that on June 13, 2014, the Oliver Defendants obtained the Decedent's signature on an additional Beneficiary Designation Form naming themselves as co-equal beneficiaries to the Decedent's Life Insurance Benefits. *Id*. at ¶ 26. The June 2014 Beneficiary Designation stated that the Oliver Defendants were the Decedent's sons and daughters. *Id*. The Oliver Defendants assert that by late 2015, the Decedent's mental state had deteriorated such that he required greater care. Dkt. No. 37 at ¶¶ 27-28. The Oliver Defendants allege that the Decedent believed that his Schenectady home was along the Mississippi River and that he needed daily reminders to clean himself after using the restroom. *Id.* at ¶¶ 27, 29.

The Oliver Defendants allege that in September 2015, Defendant David Oliver called Defendant Paul Webb, III to discuss placing the Decedent in a senior living facility. *Id*. at ¶ 32. In mid-2015, Defendant David Oliver began writing checks to a senior living facility and making arrangements for the Decedent to move into the facility. Dkt. No. 26 at ¶¶ 14-15. The initial medical examinations conducted on the Decedent in late September 2015 for admission into the facility reflected that the Decedent was cognizant, had full mental capacity, and needed minimal care. *Id*. The Webb Defendants allege that they discussed with the Decedent the plans to put the Decedent into a senior living facility in October 2015. *Id.* at ¶ 16. The Decedent opposed moving to the facility and instead, expressed a desire to move to Florida. *Id*.

On October 15, 2015, the Decedent executed a Power of Attorney in New York appointing his son, Defendant Thomas Webb, as his agent and attorney in fact to handle his affairs. *Id*. at ¶ 17. The execution of the Power of Attorney was videotaped and done in the

presence of both Webb Defendants. *Id.* This new Power of Attorney was done with a new attorney rather than the Decedent's longtime estate attorney. Dkt. No. 37 at ¶¶ 37-38. The following day, the Webb Defendants moved the Decedent to Florida and he became a resident of the state. Dkt. No. 26 at ¶ 18.

The Oliver Defendants allege that on October 15, 2015, Defendant Paul Webb, III appeared unannounced at the Decedent's home and informed Defendant David Oliver that he wanted to take the Decedent to lunch. Dkt. No. 37 at ¶ 35. Rather than taking the Decedent to lunch, Defendant Paul Webb, III took the Decedent to a hotel room where Defendant Webb had Attorney Frost waiting. *Id.* at ¶ 36. The Oliver Defendants assert that the Decedent had never spoken to or met Attorney Frost prior to the meeting. *Id.* at ¶ 38. The Webb Defendants then presented the Decedent with a Power of Attorney form that Attorney Frost had prepared and falsely told the Decedent that the Oliver Defendants were stealing money from the Decedent. *Id.* at ¶¶ 37-39. The Oliver Defendants assert that the Webb Defendants knew this accusation to be false and that the Decedent's mental state prohibited him from knowing that the Oliver Defendants had not stolen anything from him. *Id.* at ¶ 41. The Oliver Defendants further allege that after the Decedent executed a new power of attorney, Defendant Thomas Webb had Defendant David Oliver removed from the Decedent's property. *Id.* at ¶¶ 42-43.

On or about October 23, 2015, the Decedent executed various estate planning documents through his estate planning attorney in Florida. *Id.* at ¶ 19. The documents executed included a Last Will and Testament, a Durable Power of Attorney appointing Thomas J. Webb as the attorney in fact and agent, a Declaration Naming Pre-need Guardians, a Designation of Health Care Surrogate, and an Affidavit of intent to reside in Florida. *Id.*; Dkt. No. 37 at ¶¶ 50, 54-55.

The Webb Defendants allege that this was done by the Decedent's new attorney and in the presence of witnesses.  Dkt. No. 26 at ¶ 19.

On October 26, 2015, Defendant David Oliver filed a petition seeking guardianship over the Decedent in New York.  *Id*. at ¶ 20.  The Oliver Defendants allege that this action was commenced because the Webb Defendants would not provide any information about the location and well-being of the Decedent.  *See* Dkt. No. 37 at ¶¶ 49, 57.  A motion to dismiss the petition was filed by the Webb Defendants alleging lack of jurisdiction because Decedent was never properly served with a copy of the order to show cause or petition.  *Id*.  The motion to dismiss argued that the New York court did not have jurisdiction over the Decedent as he was not residing in the State at the time the petition was filed and did not have any assets in the State of New York. Dkt. No. 26 at ¶ 20.

On October 27, 2015, the Decedent's primary care physician wrote a letter stating that the Decedent had organic mental syndrome consistent with Alzheimer's disease and lacked the capacity to understand or change a power of attorney.  Dkt. No. 37 at ¶ 58.  On October 28, 2015, the Schenectady County Supreme Court appointed Defendant David Oliver as interim guardian for the Decedent and Attorney Erin Hayner to serve as the Court's evaluator.  *Id*. at ¶ 59.

Following a phone interview with the Decedent, Attorney Hayner submitted a report to the Schenectady County Supreme Court stating that the Decedent was completely unable to participate in a hearing, was suffering from diminished cognitive abilities, was highly susceptible to influence, and was not in New York or aware of his surroundings.  *Id*. at ¶ 63.  The Webb Defendants assert that the Oliver Defendants used the Decedent as a source of income for themselves.  Dkt. No. 26 at ¶ 21.   During the hearing the Webb Defendants continued to assert that Defendant David Oliver was stealing from the Decedent.  Dkt. No. 37 at ¶ 64.  The Oliver

Defendants deny these allegations and claim that the Webb Defendants spread these falsehoods in an effort to isolate the Decedent from his friends and family as a means to induce the Decedent to alter his estate. *Id.* at ¶¶ 51-53.

After moving to Florida, the Decedent executed a Beneficiary Designation Form on December 1, 2015, naming his biological sons, the Webb Defendants, as co-equal beneficiaries to the Decedent's Life Insurance Benefit. Dkt. No. 26 at ¶ 27. On February 7, 2019, the Decedent died. *Id.* at ¶ 28.

## C.   Interpleader Action

The Decedent had group life insurance coverage under the "GE Life Insurance" and "GE A Plus Life Insurance" components of the Plan. Dkt. No. 1 at ¶ 12. The most recent beneficiary designation form on file for the Decedent is dated December 1, 2015, and names the Webb Defendants as co-equal beneficiaries for the life insurance benefits. *Id.* at ¶ 17. A previous beneficiary designation form dated June 13, 2014, named the Oliver Defendants as co-equal beneficiaries of the life insurance benefits. *Id.* at ¶ 18.

At the time of his death, the Decedent was enrolled under the Plan for both the "Basic Life" insurance coverage under the "GE Life Insurance" component of the Plan in the amount of $64,322 and the "GE A Plus Life Insurance" component of the Plan in the amount of $99,450 (collectively the "Plan Benefits"). *Id.* at ¶ 21. The Plan Benefits are subject to a pension overpayment reduction of $3,878.64. *Id.* at ¶ 22. Plaintiff has received claims for Plan Benefits from all Defendants. *Id.* at ¶ 23.

By letter dated April 1, 2019, James W. Oliver asserted that the December 2015 Beneficiary Designation is invalid because the Decedent was incompetent and lacked the capacity to execute it and/or was unduly influenced to execute it by Thomas J. Webb. *Id.* at ¶ 24. Plaintiff

asserts that it cannot determine whether a court would find the December 2015 Beneficiary Designation valid in light of these claims of incapacity and undue influence. *Id*. at ¶ 25. If the December 2015 Beneficiary Designation is valid, then the Plan Benefits would be payable to the Webb Defendants. *Id*. If, however, the December 2015 Beneficiary Designation is not valid, then the Plan Benefits may be payable to the Oliver Defendants based on the June 2014 Beneficiary Designation and/or a previous April 2014 Beneficiary Designation. *Id*. at ¶ 26. If each of these Beneficiary Designations are not valid, then the Plan Benefits may be payable to the Decedent's Estate. *Id*. at ¶ 27.

Plaintiff has brought this action to determine the proper beneficiary or beneficiaries of the Plan Benefits. *Id*. at ¶ 28. Plaintiff is ready, willing, and able to pay the Plan Benefits, in accordance with the terms of the Plan, in such amounts and to whichever Defendant or Defendants the Court shall designate. *Id*. at ¶ 30.

### III. DISCUSSION

The Webb Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Oliver Defendants' second and third cross-claims which allege defamation against the Webb Defendants. Dkt. No. 49 at 2-3. The Webb Defendants base their motion on three grounds. *Id*. First, the Webb Defendants argue that the Court lacks subject matter jurisdiction over the Oliver Defendants' cross-claims as they do not arise out of the same transaction or occurrence as the original interpleader action. Dkt. No. 49 at 2-3. Second, the Webb Defendants assert that the Oliver Defendants' amended complaints fail to adequately allege a defamation claim. *Id*. at 3-4. Third, the Webb Defendants argue that many of the acts of defamation are time barred. *Id*. The Oliver Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Webb Defendants' cross-claims for intentional

interference with an expected inheritance.[2]   Dkt. Nos. 52, 53, 55, 56, 58, 59, 61, 62.

**A.      Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.   *See Patane v.*

*Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).   In considering the legal

sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all

reasonable inferences in the pleader's favor.   *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted).   This presumption of truth, however, does not

extend to legal conclusions.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although a court's review of a motion to dismiss is generally limited to the facts presented in the

pleading, the court may consider documents that are "integral" to that pleading, even if they are

neither physically attached to, nor incorporated by reference into, the pleading.   *See Mangiafico v.*

*Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d

147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief

above the speculative level," *see id.* at 555 (citation omitted), and present claims that are

---

[2] In their motion to dismiss, the Webb Defendants discuss a cross-claim for fraud; however, they acknowledge that the Oliver Defendants have not brought a separate cross-claim for fraud. *See* Dkt. Nos. 53, 56, 59, 62.  Because cross-claim for fraud has not been alleged, the Court will not construe the Oliver Defendants' allegations as including such a claim. Additionally, the Webb Defendants have voluntarily dismissed their claim for rescission.  Dkt. No. 76.  Therefore, the portion of the Webb Defendants' motion addressing the rescission claim is moot.

"plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).  The Second Circuit has held that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## B.    Choice of Law

Both the Oliver and Webb Defendants base their respective motions to dismiss on different state law.  In their motion to dismiss, the Webb Defendants assert that pursuant to Massachusetts law, the Oliver Defendants' defamation claims are time barred.  Dkt. No. 49 at 3-4. However, the Oliver Defendants each claim that Massachusetts law is not applicable.  Dkt. No. 75 at 7; Dkt. No. 78 at 7; Dkt. No. 80 at 7; Dkt. No. 81 at 7.  Additionally, the Oliver Defendants moved to dismiss the Webb Defendants' intentional interference with an inheritance expectancy claim because New York law does not recognize such a claim.  Dkt. No. 53 at 10; Dkt. No. 56 at

10; Dkt. No. 59 at 10; Dkt. No. 62 at 10.  The Webb Defendants assert, however, that Florida law

governs the Oliver Defendants' motion to dismiss.  Dkt. No. 77 at 4.

"A federal court sitting in diversity applies the choice of law rules of the forum state."  *Lee*

*v. Bankers Tr. Co*., 166 F.3d 540, 545 (2d Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*.,

313 U.S. 487, 496 (1941)).  "In tort cases like this, New York applies the law of the state with the

most significant interest in the litigation."  *Id.* (citing *Padula v. Lilarn Properties Corp*., 84

N.Y.2d 519, 521 (1994)).  While "[t]he historical approach ... to choice-of-law questions arising

in tort cases in this State was to invariably apply the law of the place where the tort occurred to all

substantive issues arising from the occurrence ...  the Court of Appeals long ago rejected this

approach."  *Shaw v. Carolina Coach*, 82 A.D.3d 98, 100-01 (2d Dep't 2011) (internal citations

and quotation marks omitted).  The court held that "[t]he traditional rule has therefore been

replaced by a more flexible 'interest analysis,' under which 'the law of the jurisdiction having the

greatest interest in resolving the particular issue' is given controlling effect."  *Id*. at 101 (listing

cases).

However, the "interest analysis" distinguishes "between laws that regulate primary

conduct (such as standards of care) and those that allocate losses after the tort occurs."  *Id*.

(quoting *Cooney v. Osgood Mach., Inc*., 81 N.Y.2d 66, 72 (1993)).  "If the conflicting laws

regulate conduct, the law of the place of the tort 'almost invariably obtains' because 'that

jurisdiction has the greatest interest in regulating behavior within its borders.'"  *Id.* (quoting

*Cooney*, 81 N.Y.2d at 74, 72).  Where "competing postevent remedial rules are at stake, other

factors are taken into consideration, principal among which is the location of the parties'

domiciles."  *Id*. (internal quotation marks omitted).

### 1. The Oliver Defendants' Defamation Claims

In their motion to dismiss, the Webb Defendants assert that pursuant to Massachusetts law, the Oliver Defendants' defamation claims are time barred. Dkt. No. 49 at 3-4. The Oliver Defendants assert that New York law applies to their cross-claims. Dkt. No. 75 at 6-17.

"Choice of law analysis in defamation cases remains ... 'a dismal swamp, filled with quaking quagmires, and inhabited by learned but eccentric professors who theorize about mysterious matters in a strange and incomprehensible jargon.'" *Adelson v. Harris*, 973 F. Supp. 2d 467, 475-76 (S.D.N.Y. 2013) (quoting William L. Prosser, *Interstate Publications*, 51 Mich. L. Rev. 959, 971 (1953)). "Multistate defamation cases applying New York choice of law rules are invariably adjudicated in the federal courts, meaning that New York state courts have not had the opportunity to weigh in on how the choice of law analysis should be undertaken." *Id*. at 476.

"Discouraging defamation is a conduct regulating rule," and, therefore, "the situs of the tort[ ] should control." *Lee*, 166 F.3d at 545. However, in multistate defamation cases, the state with the most significant relationship is not necessarily readily apparent. *See Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014) (citing *Adelson*, 973 F. Supp. 2d at 476-78). "Therefore, the Court must determine whether there is a state with a more significant relationship to the issue or the parties than [the state] where [the plaintiff] is domiciled." *Id.* In making this determination, New York courts consider the following factors: "'where the plaintiff suffered the greatest injury'; 'where the statements emanated and were broadcast'; 'where the activities to which the allegedly defamatory statements refer took place'; and 'the policy interests of the states whose law might apply.'" *Id*. (quoting *Condit v. Dunne*, 317 F. Supp. 2d 344, 353 (S.D.N.Y. 2004)).

The Oliver Defendants assert defamation *per se* against the Webb Defendants for six separate letters they are alleged to have published. First, a letter from Defendant Thomas Webb

to Plaintiff on May 13, 2019, sent via email asserting that the Oliver Defendants were "bad news" and that the Webb Defendants were currently suing the Oliver Defendants for more than $100,000 of the Decedent's money they wrongly spent. Dkt. No. 37-2 at 43-45. Second, an email from Defendant Paul Webb, III to Plaintiff on May 8, 2019, asserting that the Oliver Defendants "engaged in financial elder abuse" of the Decedent and that there were open court cases against the Oliver Defendants for financial abuse of the Decedent. *See id.* at 11-14.

Third, a letter from the "Webb Family" to the Decedent's neighbors in Schenectady, New York dated November 8, 2019, asserting that Defendant James Oliver had been arrested for larceny, was disbarred from the practice of law in Connecticut, and is facing a law license disciplinary action in Massachusetts. *See id.* at 27. The letter also claimed that Defendant David Oliver had been cited for felony theft of funds from the Decedent, breached his fiduciary responsibilities, and is facing legal issues similar to Defendant James Oliver. *See id.* at 27. Fourth, a letter from Thomas Webb to Capital Group on January 6, 2016 addressed to a P.O. Box in New Hampshire and a street address in California asserting that Defendant Barbara Forth colluded with Defendants James and David Oliver to steal funds from the Decedent. *See id.* at 29.

Fifth, another letter from Thomas Webb to Capital Group on January 25, 2016 addressed to both a P.O. Box in New Hampshire and a street address in California asserting similar allegations as the previous letter. *See id.* at 31. Finally, a letter signed by "Concerned Friends of the Family" addressed to the Educational Development Center dated December 2017 and listing a Massachusetts address asserting that Defendant Carol Oliver stole from the Decedent and has substance abuse issues. *See id.* at 35.

### a. Defendant David Oliver

Defendant David Oliver is a resident of Massachusetts and was a subject of all six letters. Defendant David Oliver recognizes that the Court may find that Massachusetts law applies, but asserts that New York law should apply because that is where the publication of the letters and subsequent damage occurred.  Dkt. No. 80 at 7-15.  Four of the six letters were published in New York and Defendant David Oliver does not assert any additional harm from the two published in California and Massachusetts.  *See* Dkt. No. 37-2 at 11-14, 27, 29, 31 35, 43-45; Dkt. No. 80 at 7-8.  Although the Webb Defendants apply Massachusetts laws in their motion to dismiss, Massachusetts has very little to do with this action.  While Defendant David Oliver lives in Massachusetts, only one letter was published in Massachusetts and the majority were published in New York.  Additionally, the letters refer to activities within New York; specifically that the Oliver Defendants stole from and abused the Decedent, who resided in New York.  Dkt. No. 37-2 at 11-14, 43-45.

Finally, New York has a strong interest in regulating the conduct within its borders, including discouraging defamation.  *See Lee*, 166 F.3d at 545.  After considering the relevant factors, the Court finds that New York has the most significant interest in the litigation.  *See Catalanello*, 18 F. Supp. 3d at 512.  Therefore, New York law will apply to Defendant David Oliver's defamation claims against the Webb Defendants.

### b. Defendant James Oliver

Defendant James Oliver is a resident of Connecticut and was the subject of all six letters. Defendant James Oliver asserts that New York or Connecticut law should apply because he lives in Connecticut and New York is where the publication of the letters and subsequent damage occurred.  Dkt. No. 81 at 7-8.  While there is a presumption that the injured party's domicile will be the site of their injury, no letters were published in Connecticut.  Three of the six letters were

published in New York and Defendant James Oliver does not assert any additional harm from the two published in California and Massachusetts.  *See* Dkt. No. 37-2 at 11-14, 27, 29, 31 35, 43-45; Dkt. No. 81 at 7-8.

While the Webb Defendants apply Massachusetts laws in their motion to dismiss, Massachusetts has very little to do with this action.  Defendant James Oliver does not live in Massachusetts and only one letter was published in Massachusetts, whereas the majority were published in New York.  Additionally, the letters refer to activities within New York, specifically that the Oliver Defendants stole from and abused the Decedent who lived in New York.  *Id*. at 11-14, 43-45.  Finally, New York has a strong interest in regulating the conduct within its borders, including discouraging defamation.  *See Lee*, 166 F.3d at 545.

After considering the relevant factors, the Court finds that New York has the most significant interest in the litigation.  *See Catalanello*, 18 F. Supp. 3d at 512.  Therefore, New York law will apply to Defendant James Oliver's defamation claims against the Webb Defendants.

### c. Defendant Barbara Forth

Defendant Forth is a resident of California and was the subject of five letters.  Defendant Forth asserts that New York or California law should apply because she lives in California and New York is where the publication of the letters and subsequent damage occurred.  Dkt. No. 78 at 7-16.  Three of the five letters were published in New York, however, two were published in California.  *See* Dkt. No. 37-2 at 11-14, 27, 29, 31 35, 43-45; Dkt. No. 78 at 7-8.  The two published in California were sent to Defendant Forth's employer.  Dkt. No. 37-2 at 29, 31.

However, Defendant Forth does not assert any harm suffered in California distinct from that suffered in New York or Massachusetts.  *See generally* Dkt. No. 39.  While there is a presumption that the injured party's domicile will be the site of their injury, the letters refer to

activities within New York, specifically that the Oliver Defendants stole from and abused the Decedent who lived in New York.  Dkt. No. 37-2 at 11-14, 43-45.  Finally, New York has a strong interest in regulating the conduct within its borders, including discouraging defamation. *See Lee*, 166 F.3d at 545.

While the Webb Defendants apply Massachusetts laws in their motion to dismiss, Massachusetts has very little to do with this action.  Defendant Forth does not live in Massachusetts, only one letter was published in Massachusetts, and the majority of letters were published in New York.  Further, Defendant Forth was not the subject of the letter published in Massachusetts.  *See* Dkt. No. 37-2 at 35.  After considering the relevant factors, the Court finds that New York has the most significant interest in the litigation.  *See Catalanello*, 18 F. Supp. 3d at 512.  Therefore, New York law will apply to Defendant Forth's defamation claims against the Webb Defendants.

### d. Defendant Carol Oliver

Defendant Carol Oliver is a resident of Massachusetts and was the subject of four letters. Defendant Carol Oliver asserts that New York law should apply because that is where the publication of the letters and subsequent damage occurred.  Dkt. No. 75 at 7-8.  Three of the four letters were published in New York and Defendant Carol Oliver does not assert any harm from the one letter that was sent to her employer and published in Massachusetts.  *See* Dkt. No. 37-2 at 11-14, 27, 29, 31 35, 43-45; Dkt. No. 75 at 7-8.  Additionally, the letters refer to activities within New York, specifically that the Oliver Defendants stole from and abused the Decedent who lived in New York.  Dkt. No. 37-2 at 11-14, 43-45.  Finally, New York has a strong interest in regulating the conduct within its borders, including discouraging defamation.  *See Lee*, 166 F.3d at 545.  After considering the relevant factors, the Court finds that New York has the most

significant interest in the litigation.  *See Catalanello*, 18 F. Supp. 3d at 512.  Therefore, New York

law will apply to Defendant Carol Oliver's defamation claims against the Webb Defendants.

### 2. *Webb Defendants' Intentional Interference with an Inheritance Expectancy Claim*

The Webb Defendants assert that Florida law governs their cross-claim for intentional

interference with an inheritance expectancy because the Decedent was living in Florida at the time

he executed the change of beneficiary form and lived there until he died three years later.  Dkt.

No. 77 at 4.  The Oliver Defendants assert that New York law applies as the Webb Defendants'

cross-claim concerns a contract made and executed in New York with a New York corporation.

Dkt. No. 53 at 10; Dkt. No. 56 at 10; Dkt. No. 59 at 10; Dkt. No. 62 at 10.  Additionally, the

Oliver Defendants argue that the Decedent executed two of the three beneficiary designation

forms as a resident of New York.  Dkt. No. 53 at 10; Dkt. No. 56 at 10; Dkt. No. 59 at 10; Dkt.

No. 62 at 10.

Unlike Florida, New York does not recognize a claim for intentional interference with an

expected inheritance.  *David v. Rabuffetti*, No. 08 CIV. 5647, 2011 WL 1346997, *6 (S.D.N.Y.

Mar. 30, 2011); *Whalen v. Prosser*, 719 So. 2d 2, 4 (Fla. Dist. Ct. App. 1998).  Therefore, there is

an actual conflict among the laws and the Court must engage in a choice of law analysis.  *Shaw*,

82 A.D.3d at 100-101.  As the Court previously mentioned, "[i]f the conflicting laws regulate

conduct, the law of the place of the tort 'almost invariably obtains' because 'that jurisdiction has

the greatest interest in regulating behavior within its borders.'"  *Id.* at 101 (quoting *Cooney*, 81

N.Y.2d at 74, 72).  Where "competing 'postevent remedial rules' are at stake, other factors are

taken into consideration, principal among which is the location of the parties' domiciles."  *Id.*

(quotation omitted).  "Conduct-regulating rules have the prophylactic effect of governing conduct

to prevent injuries from occurring." *Padula*, 84 N.Y.2d at 522. "Loss allocating rules, on the other hand, are those which prohibit, assign, or limit liability after the tort occurs[.]" *Id.*

Under Florida law, "[t]he elements of [intentional interference with an expected inheritance] include: (1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct; (3) causation; and (4) damages." *Whalen*, 719 So. 2d at 5 (citing *Davison v. Feuerherd*, 391 So. 2d 799 (Fla. 2d DCA 1980)). "[T]he common law court has created this cause of action not primarily to protect the beneficiary's inchoate rights, but to protect the deceased testator's former right to dispose of property freely and without improper interference. In a sense, the beneficiary's action is derivative of the testator's rights." *Id.* at 6. Finally, a cause of action asserting intentional interference with an inheritance may not be brought until after the testator has died and the alleged tortious conduct as occurred. *Id.* at 5-6.

The primary effect of this tort is to allocate losses after the tort occurs rather than regulate conduct causing the harm. *See id.* at 6 (noting that "there is a tendency to prefer that such inheritance disputes be resolved in post death proceedings"). This is done by the court examining the interest of the testator and the damages suffered by the beneficiary and reallocating the losses so as to fulfil the wishes of the testator at the time he drafted the inheritance conveying documents. *See id.* This tort does not prohibit any specific conduct. Thus, it cannot be said that this tort is conduct regulating and the location of the tort need not govern. *See Shaw*, 82 A.D.3d at 101.

As the law is not conduct regulating, the Court must consider other factors, including the location of the parties' domiciles, to determine whether New York or Florida law should apply. *Id.* Of all the parties, only Defendant Thomas Webb is a resident of Florida. Dkt. No. 1 at ¶¶ 2-8. Plaintiff, the only surviving party to the contract, is a resident of New York. *Id.* at ¶ 2. Further,

the Webb Defendants assert that the actual tortious conduct the Oliver Defendants engaged in was "falsely and fraudulently submit[ing] information to Met Life to prevent it from sending the insurance proceeds to the Webbs as expected." Dkt. No. 77 at 6. The Webb Defendants direct the Court to letters drafted by Defendant James Oliver, a resident of Simsbury, Connecticut, to Plaintiff in New York. Dkt. Nos. 1-9, 1-10. It appears that the submission of this information, and thus the tort, occurred in New York.

Additionally, almost all the conduct the Oliver Defendants assert as support of their challenge to the expected inheritance of the Webb Defendants occurred in New York. *Id*. While the Decedent signed the December 2015 Beneficiary Designation Form while living in Florida, he still listed his New York address on the form and listed Defendant Thomas Webb as a resident of Connecticut. Dkt. No. 1-3. In fact, all Beneficiary Designation forms presented to the Court listed a New York address for the Decedent. Dkt. Nos. 1-3, 1-4, 1-5, 1-6.

While the record is devoid of any evidence as to the location of the Decedent's work, through which he purchased the Plan, his residency would indicate that his employment was in New York. The Webb Defendants do not present any evidence or even assert that the Decedent purchased or paid into the plan while a resident, whether temporary or permanently, of Florida. Examining all the facts, Florida's interest in this litigation is minimal at best. Clearly, the December 2015 Beneficiary Designation Form relates to a contract between a New York resident, who only recently moved to Florida, and a New York corporation with no intended beneficiaries living in Florida at the time it was executed. Therefore, the Court will apply New York law to the Webb Defendants' second cross-claim for intentional interference with an expected inheritance.

Having determined that New York law governs the Webb Defendants' cross-claim for intentional interference with an expected inheritance, the Webb Defendants' cross-claim must be

21

dismissed.  It is well settled that New York does not recognize an intentional interference with an inheritance expectancy claim.  *See Vogt v. Witmeyer*, 87 N.Y.2d 998, 999 (1996); *Hutchins v. Hutchins*, 1845 WL 4512 (N.Y. Sup. Ct. 1845); *In re Radio Drama Network, Inc*., 187 A.D.3d 526, 526 (1st Dep't 2020); *David*, 2011 WL 1346997, at *6; *O'Sullivan v. Hallock*, 101 A.D.3d 1313, 1314 (3d Dep't 2012).  Therefore, the Oliver Defendants' motion to dismiss the Webb Defendants' claim for intentional interference with an inheritance expectancy is granted.[3]

## C.    The Webb Defendants' Motion to Dismiss

The Oliver Defendants assert cross-claims for declaratory relief and defamation *per se* against the Webb Defendants.  Dkt. No. 37 at ¶¶ 81-106.  The Webb Defendants argue that the Oliver Defendants' defamation claims should be dismissed as they do not arise out of the same transaction or occurrence as the original interpleader action.  Dkt. No. 49 at 2-3.

"A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim ...."  Fed. R. Civ. P. 13(g).

> To determine whether a cross-claim arises out of the same transaction or occurrence that is the subject matter of the original action or of a counterclaim, the court examines (1) the identity of facts between the initial claim and the cross-claim; (2) mutuality of proof; and (3) the logical relationship between the original claim and the cross-claim.

*Bank of Montreal v. Optionable, Inc*., No. 09 CIV. 7557, 2011 WL 4063324, *3 (S.D.N.Y. Aug. 12, 2011) (citing *Federman v. Empire Fire & Marine Ins. Co*., 597 F.2d 798, 812 (2d Cir. 1979)).

---

[3] The Oliver Defendants also moved to dismiss the Webb Defendants' assertions of fraud in their cross-claim for intentional interference with an inheritance expectancy.  *See* Dkt. No. 53 at 4-9; Dkt. No. 56 at 4-9; Dkt. No. 59 at 4-9; Dkt. No. 62 at 4-9.  The Court previously indicated that it does not construe the Webb Defendants' allegations to include a cross-claim of fraud.  However, to the extent that the Oliver Defendants seek dismissal of the assertions of fraud within the intentional interference with an inheritance expectancy claim, this request is denied as moot in light of the dismissal of the intentional inference cross-claim.

"None of the three factors is conclusive, nor should they be relied on exclusively." *Id*. (citing *Federman*, 597 F.2d at 812). "Although the 'logical relationship' test does not require 'an absolute identity of factual backgrounds,' the 'essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Id*. (quoting *Jones v. Ford Motor Credit Co*., 358 F.3d 205, 209 (2d Cir. 2004)) (other citations omitted).

The facts of the cross-claim need not "correspond neatly" to those in the complaint to comply with Rule 13. *See United States v. All Right, Title & Interest in Contents of Following Accounts at Morgan Guar. Tr. Co. of N.Y.*, No. 95 CIV. 10929, 1996 WL 695671, *11 (S.D.N.Y. Dec. 5, 1996). However, common facts between a plaintiff's cause of action against all defendants and those asserted in a cross-claim do not establish that the "claim[s] arises out of the transaction or occurrence" where "the essential theories of liability and the proof necessary to sustain the claims of each claimant, that is plaintiff and cross-claimant, differ." *Id*.; *Sec. & Exch. Comm'n v. Gen. Host Corp*., 60 F.R.D. 640, 643 (S.D.N.Y. 1973).

The original claim in this case is Plaintiff's interpleader action asking the Court to determine the rightful beneficiary to the Plan Benefits of the Decedent. Dkt. No. 1. The Oliver Defendants objected to the payment of the Plan Benefits to the Webb Defendants and further asserted that the December 2015 Beneficiary Designation is invalid due to incompetence and undue influence. *Id*. at ¶ 24. Plaintiff has asked the Court to evaluate the claims of undue influence and mental incapacity to determine the rightful beneficiary to the Plan Benefits. *Id*. at ¶ 31. Therefore, in order to arise out of the same transaction or occurrence, the Oliver Defendants' defamation *per se* claims must involve substantially the same facts as the interpleader claim, a

23

mutuality of proof, and have a logical relationship with the original claim.  *See Bank of Montreal*,

2011 WL 4063324, at *3.

"The elements of a cause of action for defamation are a 'false statement, published without

privilege or authorization to a third party, constituting fault as judged by, at a minimum, a

negligence standard, and it must either cause special harm or constitute defamation per se.'"

*Salvatore v. Kumar*, 45 A.D.3d 560, 563 (2d Dep't 2007) (quoting *Dillon v. City of New York*, 261

A.D.2d 34, 38 (1st Dep't 1999)).  "A false statement constitutes defamation per se when it charges

another with a serious crime or tends to injure another in his or her trade, business, or profession."

*Geraci v. Probst*, 61 A.D.3d 717, 718 (2d Dep't 2009) (citing *Liberman v. Gelstein*, 80 N.Y.2d

429, 437-38 (1992); *Matovcik v. Times Beacon Record Newspapers*, 46 A.D.3d 636, 637 (2d

Dep't 2007)).

When adjudicating an undue influence claim or a mental competency challenge in an

interpleader action based in diversity, federal courts apply the law of the state in which they sit.

*See Metro. Life Ins. Co. v. Bradway*, No. 10 CIV. 0254, 2011 WL 723579, *4 (S.D.N.Y. Feb. 24,

2011) (citing *Transamerica Fin. Life Insurance Co. v. Session*, No. 10 Civ. 1328, 2010 WL

4273294, *2 (S.D.N.Y. Oct. 28, 2010)).  To allege undue influence in New York, a plaintiff "must

establish: (1) the existence and exertion of an influence; (2) the effective operation of such

influence as to subvert the mind at the time the transaction occurred; and (3) the execution of the

transaction that, but for undue influence, would not have happened."  *Abercrombie v. Andrew

Coll.*, 438 F. Supp. 2d 243, 273 n.27 (S.D.N.Y. 2006) (citing *Halvorsen v. Sheive*, No. 02 Civ.

6187, 2004 WL 627939, *8 (W.D.N.Y. Feb. 10, 2004)).  Specifically, "the perpetrator's behavior

must amount to moral coercion sufficient to restrain[ ] independent action and destroy[ ] free

agency or ... constrain[ ] the [victim] to do that which was against his free will and desire, but

24

which he was unable to refuse or too weak to resist." *Metro. Life Ins.*, 2011 WL 723579, at \*5 (internal quotations omitted) (quoting *In re Estate of Feller*, No. 2008–582, 2010 WL 10954, \*3 (Monroe Sur. Ct. Jan. 4, 2010)).

"Under New York Law, an individual's mental competency is measured by a stringent 'cognitive test: whether the person's mind was so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction.'" *Id*. (quoting *Sun Life Assurance Co. of Canada (U.S.) v. Gruber*, No. 05 Civ. 10194, 2007 WL 4457771, \*14 (S.D.N.Y. Dec. 14, 2007)).  "Illness or disability is insufficient to undermine the transaction unless it is shown to have destroyed the individual's competency at the moment the transaction occurred." *Id*. (citing *Gruber*, 2007 WL 4457771, at \*14-15).

While the Oliver Defendants' second and third cross-claims challenge the statements made in the various letters published after the Decedent's death, the Oliver Defendants claim that the Webb Defendants made the same assertion to the Decedent to induce him to alter his estate.  Dkt. No. 75 at 5-6; Dkt. No. 78 at 5-6; Dkt. No. 80 at 5-6; Dkt. No. 81 at 5-6.  Specifically, the Oliver Defendants assert that the Webb Defendants exerted undue influence by isolating the Decedent from his friends and family through, *inter alia*, these fraudulent statements.  Dkt. No. 75 at 5-6; Dkt. No. 78 at 5-6; Dkt. No. 80 at 5-6; Dkt. No. 81 at 5-6.  As a result, the Oliver Defendants assert that they will have to establish that these statements are fraudulent both for the original claim and cross-claims.

Indeed, shutting out the objectants from the Decedent's life is a factor to be considered in examining whether an individual exercised undue influence over the decedent.  *See In re Zirinsky*, 10 Misc. 3d 1052(A) (N.Y. Sur. Ct. 2005) (citing *Matter of Estate of Delyanis*, 252 A.D.2d 585, 586 (2d Dep't 1998)).  Additionally, such an assertion must be proven with clear and convincing

evidence, not merely with bald assertions. *Id.* (citations omitted); *see also In re Shorall's Will*, 47 A.D.2d 576, 576 (3d Dep't 1975) (finding that "'mere allegations' which fail to adequately indicate the nature of false statements allegedly made or of actions allegedly constituting undue influence" were insufficient to plead a claim for undue influence). Thus, like the Oliver Defendants' claims for defamation *per se*, the Oliver Defendants' claim for undue influence will require proof that the Webb Defendants' statements were false.

Additionally, the Oliver Defendants' defamation *per se* claims will require establishing that the Webb Defendants published the false statement without privilege or authorization to a third party and that it caused a special type of harm. *Salvatore*, 45 A.D.3d at 563. Only four of the letters were explicitly signed by the Webb Defendants. Dkt. No. 37-2 at 11-14, 27, 29, 31, 35, 43-45. Further, the majority of the remaining facts will involve conduct following the Decedent's death and separate from the alleged incident of undue influence. Certainly, there are common facts between the Oliver Defendants' cross-claims and Plaintiff's cause of action, but "the essential theories of liability and the proof necessary to sustain the claims of each claimant, that is plaintiff and cross-claimant, differ." *All Right*, 1996 WL 695671, at *11.

Thus, while it may be convenient for the Oliver Defendants to litigate their defamation claims in this action, the essential facts of the claim are not "'so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Bank of Montreal*, 2011 WL 4063324, at *3 (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004)) (other citations omitted). Accordingly, the Oliver Defendants' second and third cross-claims for defamation *per se* are dismissed.[4]

## IV. CONCLUSION

---

[4] Following the Court's decision, the only claims remaining are Plaintiff's interpleader action and each Defendants' cross-claim for declaratory judgment.

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant James Oliver's Motion to Dismiss (Dkt. No. 52) is **GRANTED**; and the Court further

**ORDERS** that Defendant David Oliver's Motion to Dismiss (Dkt. No. 61) is **GRANTED**; and the Court further

**ORDERS** that Defendant Carol Oliver's Motion to Dismiss (Dkt. No. 55) is **GRANTED**; and the Court further

**ORDERS** that Defendant Barbara Forth's Motion to Dismiss (Dkt. No. 58) is **GRANTED**; and the Court further

**ORDERS** that Defendants Paul Webb, III and Thomas Webb's Motion to Dismiss (Dkt. No. 49) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 18, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

27