**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

METROPOLITAN LIFE INSURANCE CO.,

                              **Plaintiff,**

   vs.                                                      1:20-CV-1351
                                                                              (MAD/DJS)

DAVID M. OLIVER; JAMES W. OLIVER;
BARBARA FORTH; CAROL LEE OLIVER;
PAUL R. WEBB, III; and THOMAS J. WEBB,
*Individually and as Executor of the Estate of Paul R. Webb, II*,

                              **Defendants.**

_____

**APPEARANCES:**                            **OF COUNSEL:**

**DAVID M. OLIVER**
7 Longbrook Road
Byfield, Massachusetts 01922
Defendant *pro se*

**JAMES W. OLIVER**
6 Sagamore Drive
Simsbury, Connecticut 06070
Defendant *pro se*

**BARBARA FORTH**
2997 River Reach
Williamsburg, Virginia 23185
Defendant *pro se*

**CAROL LEE OLIVER**
80 Wharf Street
Salem, Massachusetts 01970
Defendant *pro se*

**OFFICE OF MATTHEW C. HUG**         **MATTHEW C. HUG, ESQ.**
105 Jordan Road
Wyantskill, NY 12180
Attorneys for Defendants Paul R. Webb, III
and Thomas J. Webb

| | |
|---|---|
| PATTEN & ASSOCIATES | LISA PATTEN, ESQ. |
| 7575 Dr. Phillips Boulevard | GARY LEWIS, ESQ. |
| Suite 250 | |
| Orlando, Florida 32819 | |
| Attorneys for Defendants Paul R. Webb, III | |
| and Thomas J. Webb | |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, Metropolitan Life Insurance Company, brought this interpleader action on March 10, 2020, in the District of Massachusetts against Defendants David M. Oliver, James W. Oliver, Barbara Forth, Carol Lee Oliver, (hereinafter collectively the "Oliver Defendants"), Paul R. Webb, III, and Thomas J. Webb (hereinafter collectively the "Webb Defendants"). Dkt. No. 1. On October 16, 2020, the District of Massachusetts transferred this action to the Northern District of New York. Dkt. No. 101.

Trial is scheduled to commence on May 15, 2023. Currently before the Court are the parties motions *in limine*. *See* Dkt. Nos. 224, 226 & 236.

### II. BACKGROUND

**A.    Factual Allegations**[1]

This interpleader action concerns a dispute over life insurance benefits payable under the terms of an employee benefit plan (the "Plan") established and maintained by General Electric Company ("GE"). *Id*. Plaintiff issued a group insurance policy that funds the payment of the life insurance benefits made available by the Plan. *Id*.

---

[1] The following background facts are taken from the Court's March 18, 2021 Memorandum-Decision and Order. *See* Dkt. No. 127.

2

Paul Webb, II (hereinafter "the Decedent"), was an employee of GE and a Plan participant. Dkt. No. 1 at ¶ 12. The Decedent had practiced law for 50 years as a patents and trademarks lawyer. Dkt. No. 26 at ¶ 21. The Decedent married Marion A. Webb in 1956 and had five children during their marriage, Paul R. Webb, III, Thomas J. Webb, Elizabeth Webb, Jennifer Webb, and Frank Webb. *Id*. at ¶ 11. In 1992, Marion A. Webb died. *Id.* In 1995, the Decedent married Anne Oliver. *Id.* at ¶ 12.

The Decedent and Anne Oliver had no children together. *Id*. Anne Oliver had four children from a previous marriage: the Oliver Defendants. *Id*.

In the early 2000s, the Decedent and Anne Oliver retained a law firm to update their estate planning. Dkt. No. 37 at ¶ 14. On November 13, 2006, Anne Oliver executed a new will and testament that bequeathed the Decedent a life estate in the home they shared in the event of her death. *Id*. at ¶ 15. In August 2010, the Decedent executed a new last will and testament conveying a nominal grant of $500 to the Webb Defendants and the remainder of his estate to Anne Oliver and her biological children, the Oliver Defendants. *Id*. at ¶ 16. On December 9, 2003, the Decedent named his second wife, Anne Oliver, as the sole beneficiary to his Life Insurance Benefits. Dkt. No. 26 at ¶ 23. The Oliver Defendants assert that in 2013, the Decedent was diagnosed with cognitive insufficiency and required assistance with management of his finances. Dkt. No. 37 at ¶ 17. In 2013, the Decedent and Anne Oliver executed a New York State Statutory Powers of Attorney form appointing Defendant David Oliver as their attorney-in-fact to assist them in managing their finances. *Id*. at ¶ 18. Anne Oliver died in March 2014, and Decedent continued to reside in New York. *Id*. at ¶¶ 20, 22.

On April 19, 2014, an updated GE Beneficiary Designation Form was executed, listing the Oliver Defendants as the beneficiaries to the Decedent's life insurance benefits. Dkt. No. 1 at ¶¶ 19; Dkt. No. 37 at ¶ 24. The Oliver Defendants assert that the Decedent executed the new form in

3

the presence of his long-time estate planning attorney. Dkt. No. 37 at ¶ 24. However, the Webb Defendants assert that Defendant David Oliver executed the form while using his authority under the Power of Attorney for the Decedent. Dkt. No. 26 at ¶ 24.

The Webb Defendants allege that Defendant David Oliver stated on the April 2014 Beneficiary Designation Form that the Oliver Defendants were the Decedent's stepchildren. *Id*. at ¶ 25. GE rejected the modification of the beneficiary designation. *Id*. The Webb Defendants further allege that on June 13, 2014, the Oliver Defendants obtained the Decedent's signature on an additional Beneficiary Designation Form naming themselves as co-equal beneficiaries to the Decedent's Life Insurance Benefits. *Id*. at ¶ 26. The June 2014 Beneficiary Designation stated that the Oliver Defendants were the Decedent's sons and daughters. *Id*. The Oliver Defendants assert that by late 2015, the Decedent's mental state had deteriorated such that he required greater care. Dkt. No. 37 at ¶¶ 27-28. The Oliver Defendants allege that the Decedent believed that his Schenectady home was along the Mississippi River and that he needed daily reminders to clean himself after using the restroom. *Id.* at ¶¶ 27, 29.

The Oliver Defendants allege that in September 2015, Defendant David Oliver called Defendant Paul Webb, III to discuss placing the Decedent in a senior living facility. *Id*. at ¶ 32. In mid-2015, Defendant David Oliver began writing checks to a senior living facility and making arrangements for the Decedent to move into the facility. Dkt. No. 26 at ¶¶ 14-15. The initial medical examinations conducted on the Decedent in late September 2015 for admission into the facility reflected that the Decedent was cognizant, had full mental capacity, and needed minimal care. *Id*. The Webb Defendants allege that they discussed with the Decedent the plans to put the Decedent into a senior living facility in October 2015. *Id.* at ¶ 16. The Decedent opposed moving to the facility and instead, expressed a desire to move to Florida. *Id*.

On October 15, 2015, the Decedent executed a Power of Attorney in New York appointing his son, Defendant Thomas Webb, as his agent and attorney in fact to handle his affairs. *Id*. at ¶ 17. The execution of the Power of Attorney was videotaped and done in the presence of both Webb Defendants. *Id.* This new Power of Attorney was done with a new attorney rather than the Decedent's longtime estate attorney. Dkt. No. 37 at ¶¶ 37-38. The following day, the Webb Defendants moved the Decedent to Florida and he became a resident of the state. Dkt. No. 26 at ¶ 18.

The Oliver Defendants allege that on October 15, 2015, Defendant Paul Webb, III appeared unannounced at the Decedent's home and informed Defendant David Oliver that he wanted to take the Decedent to lunch. Dkt. No. 37 at ¶ 35. Rather than taking the Decedent to lunch, Defendant Paul Webb, III took the Decedent to a hotel room where Defendant Webb had Attorney Frost waiting. *Id*. at ¶ 36. The Oliver Defendants assert that the Decedent had never spoken to or met Attorney Frost prior to the meeting. *Id*. at ¶ 38. The Webb Defendants then presented the Decedent with a Power of Attorney form that Attorney Frost had prepared and falsely told the Decedent that the Oliver Defendants were stealing money from the Decedent. *Id*. at ¶¶ 37-39. The Oliver Defendants assert that the Webb Defendants knew this accusation to be false and that the Decedent's mental state prohibited him from knowing that the Oliver Defendants had not stolen anything from him. *Id*. at ¶ 41. The Oliver Defendants further allege that after the Decedent executed a new power of attorney, Defendant Thomas Webb had Defendant David Oliver removed from the Decedent's property. *Id.* at ¶¶ 42-43.

On or about October 23, 2015, the Decedent executed various estate planning documents through his estate planning attorney in Florida. *Id.* at ¶ 19. The documents executed included a Last Will and Testament, a Durable Power of Attorney appointing Thomas J. Webb as the attorney in fact and agent, a Declaration Naming Pre-need Guardians, a Designation of Health

5

Care Surrogate, and an Affidavit of intent to reside in Florida. *Id*.; Dkt. No. 37 at ¶¶ 50, 54-55. The Webb Defendants allege that this was done by the Decedent's new attorney and in the presence of witnesses. Dkt. No. 26 at ¶ 19.

On October 26, 2015, Defendant David Oliver filed a petition seeking guardianship over the Decedent in New York. *Id*. at ¶ 20. The Oliver Defendants allege that this action was commenced because the Webb Defendants would not provide any information about the location and well-being of the Decedent. *See* Dkt. No. 37 at ¶¶ 49, 57. A motion to dismiss the petition was filed by the Webb Defendants alleging lack of jurisdiction because the Decedent was never properly served with a copy of the order to show cause or petition. *Id*. The motion to dismiss argued that the New York court did not have jurisdiction over the Decedent as he was not residing in the State at the time the petition was filed and did not have any assets in the State of New York. Dkt. No. 26 at ¶ 20.

On October 27, 2015, the Decedent's primary care physician wrote a letter stating that the Decedent had organic mental syndrome consistent with Alzheimer's disease and lacked the capacity to understand or change a power of attorney. Dkt. No. 37 at ¶ 58. On October 28, 2015, the Schenectady County Supreme Court appointed Defendant David Oliver as interim guardian for the Decedent and Attorney Erin Hayner to serve as the Court's evaluator. *Id*. at ¶ 59.

Following a phone interview with the Decedent, Attorney Hayner submitted a report to the Schenectady County Supreme Court stating that the Decedent was completely unable to participate in a hearing, was suffering from diminished cognitive abilities, was highly susceptible to influence, and was not in New York or aware of his surroundings. *Id*. at ¶ 63. The Webb Defendants assert that the Oliver Defendants used the Decedent as a source of income for themselves. Dkt. No. 26 at ¶ 21. The Webb Defendants continued to assert that Defendant David Oliver was stealing from the Decedent. Dkt. No. 37 at ¶ 64. The Oliver Defendants deny these

6

allegations and claim that the Webb Defendants spread these falsehoods in an effort to isolate the Decedent from his friends and family as a means to induce the Decedent to alter his estate. *Id.* at ¶¶ 51-53.

After moving to Florida, the Decedent executed a Beneficiary Designation Form on December 1, 2015, naming his biological sons, the Webb Defendants, as co-equal beneficiaries to the Decedent's Life Insurance Benefit. Dkt. No. 26 at ¶ 27. On February 7, 2019, the Decedent died. *Id.* at ¶ 28.

**B.     Interpleader Action**

The Decedent had group life insurance coverage under the "GE Life Insurance" and "GE A Plus Life Insurance" components of the Plan. Dkt. No. 1 at ¶ 12. The most recent beneficiary designation form on file for the Decedent is dated December 1, 2015, and names the Webb Defendants as co-equal beneficiaries for the life insurance benefits. *Id.* at ¶ 17. A previous beneficiary designation form dated June 13, 2014, named the Oliver Defendants as co-equal beneficiaries of the life insurance benefits. *Id.* at ¶ 18.

At the time of his death, the Decedent was enrolled under the Plan for both the "Basic Life" insurance coverage under the "GE Life Insurance" component of the Plan in the amount of $64,322 and the "GE A Plus Life Insurance" component of the Plan in the amount of $99,450 (collectively the "Plan Benefits"). *Id.* at ¶ 21. The Plan Benefits are subject to a pension overpayment reduction of $3,878.64. *Id.* at ¶ 22. Plaintiff has received claims for Plan Benefits from all Defendants. *Id.* at ¶ 23.

By letter dated April 1, 2019, James W. Oliver asserted that the December 2015 Beneficiary Designation is invalid because the Decedent was incompetent and lacked the capacity to execute it and/or was unduly influenced to execute it by Thomas J. Webb. *Id.* at ¶ 24. Plaintiff asserts that it cannot determine whether a court would find the December 2015 Beneficiary

7

Designation valid in light of these claims of incapacity and undue influence. *Id*. at ¶ 25. If the December 2015 Beneficiary Designation is valid, then the Plan Benefits would be payable to the Webb Defendants. *Id*. If, however, the December 2015 Beneficiary Designation is not valid, then the Plan Benefits may be payable to the Oliver Defendants based on the June 2014 Beneficiary Designation and/or a previous April 2014 Beneficiary Designation. *Id*. at ¶ 26. If each of these Beneficiary Designations are not valid, then the Plan Benefits may be payable to the Decedent's Estate. *Id*. at ¶ 27.

Plaintiff has brought this action to determine the proper beneficiary or beneficiaries of the Plan Benefits. *Id*. at ¶ 28. Plaintiff is ready, willing, and able to pay the Plan Benefits, in accordance with the terms of the Plan, in such amounts and to whichever Defendant or Defendants the Court shall designate. *Id*. at ¶ 30.

### III. DISCUSSION

**A.   Standard of Review**

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996). A district court's ruling on a motion *in limine* is preliminary and "subject to change when the case unfolds." *Luce*, 469 U.S. at 41. The moving party bears the burden of establishing that evidence is inadmissible for any purpose and so properly excluded on a motion *in limine*. *See United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

**B.   Reference to New York Guardianship Action and Report of Erin Hayner**

The Webb Defendants seek to exclude reference to the New York guardianship action and the testimony and report of Erin Hayner. *See* Dkt. No. 224. The Webb Defendants contend that

8

the New York guardianship action was a failed attempt by David Oliver to be appointed as the Decedent's guardian, which was not completed and ultimately dismissed because the Decedent had already relocated to Florida and the New York court lacked jurisdiction. *See id.* at 3. Similarly, the Webb Defendants argue that the reported generated by Ms. Hayner was for the New York guardianship proceeding, it is irrelevant and inadmissible hearsay. *See id.* at 3-4. Finally, the Webb Defendants argue that the Oliver Defendants failed to disclose Ms. Hayner as an expert witness and, therefore, she must not be permitted to testify about the Decedent's capacity on December 1, 2015. *See id.* at 4. The Oliver Defendants claim that Ms. Hayner will testify that she was appointed as the "Court Neutral" in the guardianship proceeding and that part of her duty was to interview the Decedent to assess his mental and physical condition, which she did on November 9 and 12, 2015. *See* Dkt. No. 243 at 2. The Oliver Defendants note that these interviews took place approximately two weeks before the Decedent executed the December 1, 2015, insurance beneficiary form at issue in this litigation. *See id.* As such, the Oliver Defendants argue that her conclusions from those interviews are relevant to the issues to be decided in this matter. *See id.* at 3-4.

As noted above, Ms. Hayner was appointed as a "Court Neutral" in the New York guardianship proceeding that was commenced by the Oliver Defendants. She conducted two interviews by telephone with the Decedent on November 9 and 12, 2015, approximately two weeks before the Decedent executed the insurance beneficiary form at issue in this matter. In her report to the court, Ms. Hayner provided the following observations/conclusions:

> – My overall impression of Paul Webb, II, is that he is a very charming and likeable man. Although he uses charm and humor to deflect from his memory issues. Mr. Webb is definitely suffering from dementia and not only has a loss of short term memory, but based upon my questioning, is even unable to answer more long-term memory questions. I do not believe that Mr. Webb decided one day to move to

9

> Florida, without sufficient coaxing and the influence of others. I do believe that Paul is well-fed, housed well, and his medical and daily needs are being met. He is also enjoying the Florida sun and time with his grandchildren.
>
> – [Paul Webb, II] is incapable of understanding and cannot agree to the appointment of the proposed Guardian since he is suffering from diminished cognitive ability and is highly susceptible to influence (as indicated by my phone conversations).
>
> – [Paul Webb, II] is completely unable to participate in a hearing since he is suffering from diminished cognitive ability and is highly susceptible to influence (as indicated by my phone conversations) and is not aware of his surroundings.

Dkt. No. 225 at 5, 8. Ms. Hayner also noted that, during her conversations with the Decedent, his grandson (Jordan Webb) was present and could be heard instructing the Decedent how he should answer the questions being posed to him. *See id.* at 3-4.

Contrary to the Webb Defendants' contentions, the Court finds that Ms. Hayner's proposed testimony and report is relevant and not unduly prejudicial. Her telephonic conversations with the Decedent occurred two weeks prior to the date when he signed the insurance beneficiary form at issue here and her observations are relevant to both whether the Decedent could have had testamentary capacity near the time at issue and also whether any individual was exercising undue influence over the Decedent.

Moreover, the Court finds that Ms. Hayner was not required to be disclosed as an expert witness. She was appointed by the state court as a neutral observer. She is an attorney and not a medical professional. While Ms. Hayner will obviously not be permitted to testify whether or not the Decedent was capable of having testamentary capacity during the time at issue or to provide a

10

medical diagnose, she will be permitted to testify regarding her observations and general non-medical conclusions.[2]

Accordingly, the Court denies this aspect of the Webb Defendants' motion *in limine*.

**C.     Testimony of Amy Robinson, Esq. and Lori Mayo**

The Webb Defendants move to preclude the testimony of Amy Robinson, Esq. and Lori Mayo. *See* Dkt. No. 226. Ms. Robinson is an attorney who prepared certain estate planning documents for the Decedent and Ms. Mayo is an employee in Ms. Robinson's law firm who assisted. *See id.* at 2-3. The Webb Defendants contend that "[i]t is clear that Attorney Robinson and Ms. Mayo's June 13, 2014 involvement with Mr. Webb is not relevant or probative of whether Mr. Webb had adequate capacity to execute the December 1, 2015 Beneficiary Designation form or whether he was unduly influenced at that time." *Id.* at 3.

In response, the Oliver Defendants note that Ms. Robinson will testify that the Decedent executed a will in 2006 which left his estate to Anne Oliver Webb and, if she predeceased him, then his estate was to go to the Oliver Defendants, with each of the Webb Defendants to receive $5,000.00. *See* Dkt. No. 244 at 2. She will also testify that on June 13, 2014, she was at the Decedent's home when he executed an insurance beneficiary form that listed the Oliver Defendants as beneficiaries to the MetLife Insurance policies and she will testify that naming the Oliver Defendants as beneficiaries was consistent with the Decedent's long term estate planning. *See id.* at 2-3. Finally, Ms. Robinson will testify as to her role in probating the estate of Anne Oliver Webb and working with James Oliver, who was appointed as executor, to ensure that the Decedent received a life estate in the Niskayuna home, as directed pursuant to the terms of the

---

[2] To the extent that the Webb Defendants are concerned about any prejudice stemming from the fact that Ms. Hayner's report was made for purposes of a New York guardianship proceeding that was dismissed prior to any substantive decision being made, they may request an appropriate limiting instruction to be given at the time of Ms. Hayner's testimony.

11

will of Anne Oliver Webb. *See id.* at 3. The Oliver Defendants contend that Ms. Mayo testimony would be similar to that of Ms. Robinson and that she may not be called as a witness. *See id.* at 5.

Contrary to the Webb Defendants' contentions, the Court finds that this testimony is relevant to issues to be decided by the trier of fact. Specifically, this testimony is relevant to the Decedent's prior end-of-life planning relating both his will and life insurance beneficiary designation before he moved to Florida in 2015. The Oliver Defendants have alleged that Thomas Webb and Paul Webb, III subjected the Decedent to undue influence between October 15, 2015, and December 1, 2015, by, among other things, isolating him from the Oliver Defendants and misinforming him that the Oliver Defendants defrauded him regarding the life estate and out of his right to a statutory forced share of Anne Oliver Webb's estate. Additionally, the Webb Defendants alleged in their cross claims that the Oliver Defendants "have always been, and still are, only interested in the Decedent's money and asserts, including the life insurance benefits which are the subject of this lawsuit. Up until the Decedent moved to the State of Florida, the [Oliver Defendants] were using the Decedent as a source of cash income for themselves." Dkt. No. 244 at 6. Ms. Robinson's proposed testimony would potentially rebut, in some limited respects, such claims of impropriety by the Oliver Defendants.

Accordingly, the Court denies the Webb Defendants' motion *in limine* seeking to preclude the testimony of Amy Robinson and Lori Mayo. *See* Dkt. No. 244.

**D.   Evidence Concerning James Oliver's Disbarment**

Defendant James Oliver moves "to preclude admission into evidence the facts relating to the disbarment of James Oliver from the Connecticut State and Federal District Court and/or his suspension from the Massachusetts State Court." Dkt. No. 236 at 2. Defendant James Oliver argues that this evidence should be precluded for the following reasons: (1) "[t]he facts and circumstances surrounding this evidence are completely extrinsic to the issues presently before

12

this Court which involve claims of mental incompetency and undue influence by the Webb Defendants;" (2) at no time did the Connecticut court find that he "knowingly lied to his clients or8:22-cr-481 the court" and, therefore, this evidence does not trigger the application of Rule 608(b) for character impeachment; and (3) Defendant James Oliver is not listed as a proposed witness in this matter since "his testimony would be cumulative and redundant to that of his siblings" and he will be person on behalf of the Oliver Defendants to present evidence, through both witnesses and exhibits.  *See id.* at 2-3.  In response, the Webb Defendants contend that James Oliver's disbarment is admissible as impeachment evidence pursuant to Rule 608.  *See* Dkt. No. 241 at 3.  The Webb Defendants claims that James Oliver's disbarment "for numerous violations of the Professional Rules of Conduct involving dishonesty, fraud, deceit or misrepresentations, including during the Connecticut Bar's investigation, speaks directly to his credibility for untruthfulness." *Id.* at 4.

On August 5, 2014, Defendant James Oliver was disbarred by the Connecticut Bar Association based upon numerous violations of the Rules of Professional Conduct.  The Connecticut Superior Court specifically found that James Oliver violated Rules 3.3(a)(1),[3]

---

[3] Rules 3.3(a)(1) of the Rules of Professional Conduct states that "a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer ..."

3.3(a)(1)(3),[4] 3.4(2),[5] and 8.4(3).[6] *See* Dkt. No. 236 at 31-34. According to the Connecticut Superior Court, James Oliver was found to have committed the following acts: (1) during a fee dispute with a client, informed that client that part of the fee had been paid to a postal inspector as a bribe in order to end the investigation into that client; (2) made representations to his client and the court that the expert witness that he hired had credentials which she did not and that she was also a "non-disclosed [federal] agent," which was the reason she was unable to testify in open court in that it would jeopardize her safety when, in fact, the individual had no association to any federal agency; and (3) attempted to coerce this same "non-disclosed agent" to testify in a manner contrary to the truth. *See id.* at 28-34.

Contrary to the Oliver Defendants' contentions, should James Oliver testify in this matter, the Webb Defendants may impeach his testimony by cross examining him regarding his disbarment. James Oliver was disbarred for numerous violations of the Professional Rules of Conduct involving dishonesty, fraud, deceit, and misrepresentations, including during the Connecticut Bar's investigation. This conduct is exceedingly probative of his character for untruthfulness and such cross examination is not unduly prejudicial under Rule 403. *See United States v. Weichert*, 783 F.2d 23, 25-26 (2d Cir. 1986) (holding that the government was permitted to cross-examine the defendant about his disbarment twelve years before the trial); *United States*

---

[4] Rule 3.3(a)(1)(3) of the Rules of Professional Conduct states that "[a] lawyer shall not knowingly ... offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal."

[5] Rule 3.4(2) of the Rules of Professional Conduct states that "a lawyer shall not falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law ..."

[6] Rule 8.4(3) of the Rules of Professional Conduct states as follows: "It is professional misconduct for a lawyer to ... (3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation ..."

*v. Jackson*, 882 F.2d 1444, 1448 (9th Cir. 1989) (same).  Moreover, courts have found that extrinsic evidence regarding a witness' prior disbarment could be admissible under Rule 404 so long as it is introduced for a permissible purpose under that rule.  *See, e.g.*, *King v. University Healthcare Sys., L.C.*, No. 08-cv-1060, 2009 WL 2222700, *1-2 (E.D. La. July 24, 2009) (denying the plaintiff's motion *in limine* seeking to preclude the introduction of evidence and testimony concerning a witness' disbarment, finding that it was permissible as impeachment under Rule 608, and that extrinsic evidence regarding the disbarment could be admissible under Rule 404(b) to the extent that the evidence was introduced for a purpose other than attacking the witness' character for truthfulness).

      Finally, the Court notes that Defendant James Oliver states that he "is not listed as a proposed witness by any of the Oliver defendants as his testimony would be cumulative and redundant to that of his siblings.  James Oliver will be the only one of the Oliver defendants who will present evidence, through both witnesses and exhibits.  This is being done in an effort to avoid duplicative and redundant questioning by the other Oliver defendants and for purposes of judicial economy." Dkt. No. 236 at 2-3.  Setting aside the questionable propriety of having James Oliver act as the *de facto* attorney for the Oliver Defendants despite the fact that he is no longer licensed to practice law, the fact that James Oliver will not testify in this matter does not necessarily preclude the introduction of his disbarment.  Rule 806 of the Federal Rules of Evidence provides in relevant part as follows: "When a hearsay statement – or a statement described in Rule 801(d)(2)(C), (D), or (E) – has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806.  Rule 806 makes clear that, should any out-of-court statement be admitted to prove the truth of the matter asserted where the declarant is James Oliver, then James Oliver's credibility may be attacked.  *See*

*Thompson v. Memorial Hosp. of Carbondale*, 625 F.3d 394, 406 (7th Cir. 2010) (holding that the district court did not abuse its discretion in admitting hearsay evidence of supervisor's racial animosity towards African-American paramedic in action alleging disparate treatment under Title VII, since evidence was admitted for purpose of impeaching credibility of reports prepared by supervisor showing paramedic was performing unsatisfactorily, reports were introduced at trial by employer, and trial court gave jury limiting instruction on admission of evidence); *United States v. Daugerdas*, 837 F.3d 212, 226 (2d Cir. 2016) (holding that the danger of unfair prejudice did not substantially outweigh probative value of guilty plea by witness's advisor regarding unrelated tax crimes, which was admitted to impeach witness's hearsay testimony that advisor believed that the defendant's tax shelters were legal, and therefore admission of plea did not implicate the defendant's due process right to fair trial on client tax evasion; the plea was relevant to jury's assessment of advisor's credibility, which was itself relevant to jury's assessment of whether the defendant had good-faith belief in legality of his actions, and prejudice was mitigated by limiting instruction); *In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 158 (S.D.N.Y. 2009) (holding that parties confronted by hearsay contained within a report admitted under Rule 803(8)(C) have the right to impeach the report under Rule 806).

      Finally, the Court notes that this evidence could possibly be admissible under the residual hearsay exception. As noted above, the Court has concerns regarding James Oliver's assertions that he will not be testifying in this matter and, instead, will simply be serving as the *de facto* attorney for his siblings. This will allow James Oliver to question all of the Webb Defendants' witnesses and make opening and closing statements on behalf of the Oliver Defendants. Additionally, based on the submissions currently before the Court, it is clear that there will be testimony and evidence relating to actions taken by James Oliver in the years leading up to December 1, 2015, which are relevant to the determination of undue influence and the actual

testamentary intentions of the Decedent.  This arrangement may have been arrived at for the stated purpose of judicial economy and simply because James Oliver is the only individual on his side of the litigation who was previously licensed to practice law.  The Court, however, has its doubts.  Rather, the Court believes that his arrangement is at least partially motivated by the fact that the most damning impeachment evidence available to the Webb Defendants relates to James Oliver's disbarment.  Having James Oliver act as the *de facto* attorney for the Oliver Defendants is perhaps viewed by the Oliver Defendants as the best opportunity to prevent the Webb Defendants from introducing this evidence.

Since the pending motion *in limine* only seeks to preclude the introduction of this evidence pursuant to Rule 608, the Court need not decide at this point whether it is admissible under any of the rules discussed above.  The Oliver Defendants' motion to preclude Rule 608 evidence is, however, denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that the Webb Defendants' motion *in limine* seeking to preclude evidence relating to the New York State guardianship proceeding and the testimony and report of Erin Hayner (Dkt. No. 224) is **DENIED**; and the Court further

**ORDERS** that the Oliver Defendants' motion *in limine* seeking to preclude evidence relating to the disbarment of James Oliver (Dkt. No. 236) is **DENIED**; and the Court further

**ORDERS** that the Webb Defendants' motion *in limine* seeking to preclude the testimony of Amy Robinson and Lori Mayo (Dkt. No. 226) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 9, 2023
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge